1
2
3
4
5
6
7
8                            UNITED STATES DISTRICT COURT
9                            EASTERN DISTRICT OF CALIFORNIA
10
11    TRACYE BENARD WASHINGTON,            Case No.: 1:23-cv-01095-JLT-SKO (PC)
12                   Plaintiff,            **FIRST SCREENING ORDER**
13           v.                            (Doc. 1)
14    A. CASTILLO, et al.,                 **21-DAY DEADLINE**
15                   Defendants.
16
17          Plaintiff Tracye Benard Washington is proceeding pro se in this civil rights action
18    pursuant to 42 U.S.C. § 1983.
19          **I.      SCREENING REQUIREMENT**
20          The Court is required to screen complaints brought by prisoners seeking relief against a
21    governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).
22    The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious,
23    fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant
24    who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if
25    it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal
26    theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).
27    //
28    //

1        **II.**    **PLEADING REQUIREMENTS**

2        **A. Federal Rule of Civil Procedure 8(a)**

3        "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

4    exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain

5    "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R.

6    Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the

7    plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal

8    quotation marks & citation omitted).

9        Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

10   cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

11   U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must

12   set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"

13   *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal

14   conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

15       The Court construes pleadings of pro se prisoners liberally and affords them the benefit of

16   any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the

17   liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal

18   theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation

19   of a civil rights complaint may not supply essential elements of the claim that were not initially

20   pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

21   quotation marks & citation omitted), and courts "are not required to indulge unwarranted

22   inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation

23   marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not

24   sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

25   liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

26       **B. Linkage and Causation**

27       Section 1983 provides a cause of action for the violation of constitutional or other federal

28   rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff is required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

*grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### D. Official Capacity versus Individual Capacity

"Suits against state officials in their official capacity ... should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California). An official capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Id.* at 166.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override...." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation & citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court...." *Dittman*, 191 F.3d at

1025-26 (citing Atascadero *State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

Therefore, Plaintiff cannot pursue claims for monetary damages against the named Defendants in their official capacities because doing so is barred by the Eleventh Amendment. Plaintiff may only proceed against the named Defendants in their individual capacities.

### III.    DISCUSSION

#### A.  Plaintiff's Complaint

Plaintiff names Correctional Officer A. Castillo and/or A. Barajas,[1] Correctional Sergeant A. Corona, and Correctional Lieutenant E. Smith employed at the Substance Abuse Treatment Facility ("SATF") in Corcoran, California, as defendants in this action. (Doc. 1 at 1-2.) He sues them in their individual and official capacities. (*Id*. at 9-10.) Plaintiff seeks $1,000,000 in compensatory damages, $10,000,000 in punitive damages, and "Disqualification from service as a Peace Officer; California Assembly Bill 655." (*Id*. at 3.)

#### B.  Factual Allegations

Plaintiff contends he was housed in cell 148 of the Short-Term Restricted Housing Unit ("STRU") at SATF on August 2, 2021, for COVID-19 quarantine. (Doc. 1 at 4.) He states he has been diagnosed with asthma, glaucoma, chronic kidney disease, sickle cell traits, osteoarthritis and acute flacid paralysis, and is confined to a wheelchair. (*Id*.) Plaintiff alleges that at 10 p.m. he experienced "worsening coughing and breathing symptoms that were previously mild." (*Id*.) He felt uncomfortably warm, could not inhale sufficient oxygen, was sweating profusely and hyperventilating, could not stop coughing, and his "heart was pumping fast." (*Id*. at 5.) At 10:15 p.m., as Defendant Castillo-Barajas performed welfare checks, Plaintiff "was sitting in his wheelchair near his cell door hitting on the door and yelling out loud that he could not breathe and needed help or rather, 'Man Down.'" (*Id*.) Plaintiff contends Castillo-Barajas approached and

---

[1] Plaintiff believes Castillo and Barajas "are one and the same person." (Doc. 1 at 5, n.1.) Only one officer was on the tier before Plaintiff was taken for treatment and documentation relating to this incident reference both "A. Castillo" and "A. Barajas" as the officer involved. (*Id*.) Therefore, the Court will refer to the correctional officer involved as "Castillo-Barajas."

1   told him to stop yelling before continuing to the next cells. (*Id.*)

2       When Defendant Castillo-Barajas conducted a second welfare check, Plaintiff contends he

3   was still sitting near the cell door calling out for help and stating he could not breathe. (Doc. 1 at

4   6.) Castillo-Barajas advised Plaintiff she would let the sergeant know before continuing "down

5   the tiers." (*Id.*) At about 11:30 p.m., Plaintiff alleges Defendant Corona arrived at his cell door,

6   followed shortly by "more guards and medical staff." (*Id.*) Plaintiff contends he was removed

7   from the cell and placed on a gurney, "all the while coughing making vomiting sounds and

8   sweating profusely." (*Id.*)

9       Plaintiff asserts he was taken to the Triage Treatment Area in the Correctional Treatment

10   Center and placed on oxygen. (Doc. 1 at 6.) He was given liquid Albuterol and an EKG was

11   performed. (*Id.*) A treating nurse advised Plaintiff a doctor had been contacted; the doctor

12   recommended "Plaintiff not be sent to the hospital due to COVID-19 protocols which were in

13   place at the time." (*Id.*) At about 4 a.m., Plaintiff was returned to the STRU and placed in cell 149

14   as the window in cell 148 had been damaged. (*Id.*) Two days later, Plaintiff was seen by a doctor.

15   (*Id.*) Following a review of Plaintiff's medical records and an examination, the doctor prescribed

16   Spiriva in addition to Asmanex and Albuterol for treatment of his asthma. (*Id.*) The doctor also

17   advised Plaintiff "she was ordering another EKG because the one taken on August 2, 2021, came

18   back irregular." (*Id.* at 7.) Plaintiff contends a second EKG was delayed several times. (*Id.*)

19   Plaintiff asserts records indicate he declined a COVID-19 test on August 9, 2021, but "believes

20   this was the original COVID-19 exposure leading to the need for medical attention August 2,

21   2021, because he had never claimed to have been exposed to COVID-10 after this date." (*Id.*) A

22   second EKG performed about September 1, 2021, also came back irregular. (*Id.*) On September

23   28, 2021, a licensed vocational nurse approached Plaintiff's cell door and asked him to "take

24   another EKG. Plaintiff declined because he was scheduled to transfer the next day to Salinas

25   Valley State Prison." (*Id.*)

26       Plaintiff contends Defendant Castillo-Barajas completed a rules violation report ("RVR")

27   on August 2, 2021, "charging Plaintiff with damaging State Property for causing the cell door

28   window to become cracked." (Doc. 1 at 7.) Defendant Corona reviewed the RVR and Defendant

Smith "is listed as the Classifier." (*Id.*) At a disciplinary hearing on August 31, 2021, Plaintiff was found guilty of damaging state property and ordered to pay $150 from his inmate trust account to replace the damaged window. (*Id.*)

Plaintiff thereafter filed a grievance "regarding the events in this civil action" and the matter was referred to the Office of Internal Affairs ("OIA") for investigation. (Doc. 1 at 8.) Plaintiff was interviewed by Lieutenant Marsh from OIA on June 3, 2022. (*Id.*) Plaintiff was asked to tell Marsh "the entire account of the August 2, 2021 incident regarding A. Castillo/A. Barajas." (*Id.*) Plaintiff alleges that when asked by Marsh whether he had seen incident video, he advised Marsh that he had only heard the audio portion of the video footage because the disciplinary hearing officer angled the screen in a manner that did not allow Plaintiff to view the video portion. (*Id.*) Marsh then advised Plaintiff that "all of the video footage from this incident had been deleted" in violation of California Department of Corrections and Rehabilitation ("CDCR") policy and the *Armstrong v. Newsom* litigation, that requires all body camera footage to be preserved "when an inmate complaint is filed regarding staff misconduct." (*Id.*) Plaintiff contends that on November 16, 2022, a memorandum issued "sustaining the allegations made by Plaintiff that he was subjected to a deliberate indifference to his serious medical needs." (*Id.*)

### C. Plaintiff's Claims and Analysis

The Court construes Plaintiff's complaint to assert Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Castillo-Barajas and Corona, an Eighth Amendment failure to intervene claim against Defendant Corona, and Eighth Amendment failure to train claims against Defendants Corona and Smith.

<u>Deliberate Indifference to Serious Medical Needs</u>

Plaintiff contends Defendants Castillo-Barajas and Corona were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in "'significant injury or the unnecessary and wanton infliction of pain.''" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v.*

*Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (1994) (quoting *Whitley*, 475 U.S. at 319). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. In medical cases, this requires the following showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974

1   F.2d at 1060.

2         Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060

3   (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from

4   which the inference could be drawn that a substantial risk of serious harm exists,' but that person

5   'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison

6   official should have been aware of the risk, but was not, then the official has not violated the

7   Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe,*

8   *Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

9         To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted

10   from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096;

11   *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference

12   based on delay in treatment must show delay led to further injury).

13         Here, liberally construing the complaint, Plaintiff plausibly alleges an Eighth Amendment

14   deliberate indifference to serious medical needs claim against Defendant Castillo-Barajas.

15   Plaintiff alleges he had a medical condition significantly affecting his daily activities in the form

16   of worsening COVID-19 symptoms involving shortness of breath, persistent coughing, sweating,

17   hyperventilating and heart racing. *Colwell*, 763 F.3d at 1066. Plaintiff alleges he advised Castillo-

18   Barajas of his medical condition and asked for assistance on Castillo-Barajas' first welfare check

19   but was ignored. On Castillo-Barajas' second welfare check, Plaintiff again called out for help,

20   indicating he could not breathe, but Castillo-Barajas failed to take any immediate action to aid

21   Plaintiff. Plaintiff did not receive medical assistance until Defendant Corona and other officers

22   and medical staff arrived at his cell sometime later. *Farmer*, 511 U.S. at 847; *Wilhelm*, 680 F.3d

23   at 1122.

24         Plaintiff has not plausibly alleged an Eighth Amendment deliberate indifference to serious

25   medical needs claim against Defendant Corona. Concerning the second, subjective prong of the

26   deliberate indifference test, Plaintiff's allegations establish that Defendant Corona responded to

27   Plaintiff's serious medical condition by having Plaintiff removed from his cell, placed on a

28   gurney, and transported to the Correctional Treatment Center for medical treatment after being

1   notified of Plaintiff's condition by Defendant Castillo-Barajas. In other words, Defendant Corona

2   did not fail to respond to Plaintiff's medical need nor did Corona cause harm by any indifference.

3   *Wilhelm*, 680 F.3d at 1122. Plaintiff's allegations indicate Corona responded to his serious

4   medical needs.

5        In sum, Plaintiff states a cognizable Eighth Amendment deliberate indifference to serious

6   medical needs claim against Defendant Castillo-Barajas in his or her individual capacity, but fails

7   to state an Eighth Amendment deliberate indifference claim against Defendant Corona or any

8   other named Defendant.

9                                   Failure to Intervene

10       Plaintiff contends Defendant Corona failed to intervene in violation of his Eighth

11  Amendment rights.

12       The Eighth Amendment protects prisoners from inhumane methods of punishment and

13  from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th

14  Cir.2006). Although prison conditions may be restrictive and harsh, prison officials must provide

15  prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer*, 511

16  U.S. at 832-33. Prison officials have a duty to take reasonable steps to protect inmates from

17  physical abuse. *Id*. at 833; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir.2005). The failure of

18  prison officials to protect inmates may rise to the level of an Eighth Amendment violation where

19  prison officials know of and disregard a substantial risk of serious harm to the plaintiff. *Farmer*,

20  511 U.S. at 847; *Hearns*, 413 F.3d at 1040.

21       Here, Plaintiff fails to allege an Eighth Amendment claim against Defendant Corona on a

22  failure to intervene theory for the same reasons found above. Plaintiff's allegations establish that

23  Defendant Corona responded to Plaintiff's serious medical condition by having Plaintiff removed

24  from his cell, placed on a gurney, and transported to the Correctional Treatment Center for

25  medical treatment after being notified by Defendant Castillo-Barajas. Corona cannot plausibly be

26  said to have failed to intervene prior to having knowledge of Plaintiff's distress. And Corona did

27  not disregard Plaintiff's need for assistance. *Farmer*, 511 U.S. at 847; *Hearns*, 413 F.3d at 1040.

28       As a result, Plaintiff fails to allege an Eighth Amendment failure to intervene claim

1    against Defendant Corona.

2                            Failure to Train

3          Plaintiff contends Defendants Corona and Smith violated his Eighth Amendment rights

4    by failing to train their subordinates.

5          To state a claim for relief under section 1983 based on a theory of supervisory liability, a

6    plaintiff must allege some facts that would support a claim that the supervisory defendants either

7    personally participated in the alleged deprivation of constitutional rights; knew of the violations

8    and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the

9    policy itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional

10   violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations & internal quotation

11   marks omitted); *Taylor*, 880 F.2d at 1045. A plaintiff must also show that the supervisor had the

12   requisite state of mind to establish liability, which turns on the requirement of the particular

13   claim—and, more specifically, on the state of mind required by the particular claim—not on a

14   generally applicable concept of supervisory liability. *Oregon State University Student Alliance v.*

15   *Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012). Failure to train or to supervise may amount to

16   "deliberate indifference" if the need for training or supervision was obvious and the failure to do

17   so made a constitutional violation likely. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir.

18   2011). Mere negligence in training or supervision, however, does not rise to the level of

19   deliberate indifference. *Id.*

20         Here, liberally construing the complaint, Plaintiff fails to allege plausible failure-to-train

21   claims against Defendants Corona and Smith. First, Plaintiff does not allege specific facts

22   concerning the purportedly deficient training provided by Corona. Rather, Plaintiff simply states

23   that "Defendant Corona was also res[p]onsible for the training of both Defendant Barajas and

24   Castillo while on shift in the STRH unit" and thus "is also sued for … failure to train." (Doc. 1 at

25   10.) These conclusory statements are insufficient to link Corona to a constitutional violation.

26   *Iqbal*, 556 U.S. at 678. Nor has Plaintiff demonstrated that Defendant Corona personally

27   participated in the alleged deprivation of his constitutional rights, knew of the violations and

28   failed to act to prevent them, or promulgated or "implemented a policy so deficient that the policy

                                              11

1   'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional

2   violation.'" *Hansen*, 885 F.2d at 646.

3        Second, Plaintiff's assertions that Defendant Smith failed "to properly train his staff

4   whom were under his immediate supervision as the STRH unit Captain" and that it was Smith's

5   "duty to ensure that the [SATF] and State Prison rules, regulations, policies and procedures with

6   regard to the housing and care of inmates …are complied with by the officers," (*see* Doc. 1 at 10),

7   are equally vague and conclusory. *Iqbal*, 556 U.S. at 678. General statements that a supervisor

8   failed to train or supervise their subordinates are legal conclusions that need not be accepted as

9   true. *Id*. Plaintiff has not demonstrated Defendant Smith personally participated in the alleged

10  deprivation of his constitutional rights, knew of the violations and failed to act to prevent them, or

11  promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of

12  constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen*, 885 F.2d

13  at 646. Plaintiff has also not demonstrated that the need for more or different training was

14  obvious, and that the inadequacy was likely to result in violations of constitutional rights that the

15  supervisors can reasonable be said to have been deliberately indifferent to the need. *Dougherty*,

16  654 F.3d at 900; *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *City of Canton v.*

17  *Harris*, 489 U.S. 378, 390 (1989)).

18       Thus, Plaintiff's allegations that Defendants Corona and Smith failed to train or supervise

19  prison personnel are not cognizable and fail to state a claim.

20         **IV.    CONCLUSION AND ORDER**

21       For the reasons stated above, the Court finds Plaintiff has plausibly alleged an Eighth

22  Amendment deliberate indifference to serious medical needs claim against Defendant Castillo-

23  Barajas in his or her individual capacity only. Plaintiff has failed to allege any other cognizable

24  claim against any other named Defendant. Plaintiff will be granted leave to amend his complaint

25  to cure the identified deficiencies to the extent he is able to do so in good faith. *Lopez v. Smith*,

26  203 F.3d 1122, 1130 (9th Cir. 2000).

27       If Plaintiff does not wish to file a first amended complaint and he is agreeable to

28  proceeding only on the cognizable claim identified herein by the Court, he may file a notice

1    informing the Court that he does not intend to amend, and he is willing to proceed only on his

2    cognizable claims.

3        If Plaintiff wishes to file a first amended complaint, any such amended complaint should

4    be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the

5    deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678-79. Although accepted as

6    true, the "[f]actual allegation must be [sufficient] to raise a right to relief above the speculative

7    level ...." *Twombly*, 550 U.S. at 555 (citations omitted). Further, the amended complaint shall be

8    no longer than a total of 25 pages, including the text and any exhibits.

9        Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated

10   claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no

11   "buckshot" complaints).

12       Finally, Plaintiff is advised that an amended complaint supersedes the original complaint.

13   *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012). Therefore, any first amended

14   complaint must be "complete in itself without reference to the prior or superseded pleading."

15   Local Rule 220.

16       Accordingly, the Court **ORDERS** that:

17        1.   The Clerk's Office shall send Plaintiff a civil rights complaint form; and

18        2.   **Within 21 days** from the date of service of this order, Plaintiff must either:

19             (a) Notify the Court in writing that he does not wish to file a first amended

20             complaint and he is willing to proceed *only* on the Eighth Amendment deliberate

21             indifference to serious medical needs claim against Defendant Castillo-Barajas in

22             his or her individual capacity only; the remaining claims against any defendant to

23             be dismissed; ***or***

24             (b) File a first amended complaint curing the deficiencies identified by the

25             Court in this order; ***or***

26             (c) in the alternative, file a notice of voluntary dismissal (Fed. R. Civ. P. 41

27             (a)(1)(A)(i)); and

28        3.   **If Plaintiff fails to comply with this order, the Court will recommend that this**

13

1           **action be dismissed, without prejudice, for failure to obey a court order and**

2           **for failure to prosecute**.

3

4   IT IS SO ORDERED.

5   Dated:   **November 15, 2023**               */s/ Sheila K. Oberto*

6                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28